UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER MICHAEL JOHNSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BERRY Lt., ) <br> CREAR Chief Deputy, ) <br> SHANKLIN Caption, ) <br> ) <br> Defendants. ) | No. 1:21-cv-02205-JMS-CSW |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING FINAL JUDGMENT**

Plaintiff Christopher Johnson, an Indiana prisoner, sued the Defendants alleging they violated his First Amendment right to court access. Defendants have filed a motion for summary judgment. Dkt. [59]. For the reasons below, that motion is **GRANTED**.

**I.**
**Preliminary Matters**

Defendants timely filed their motion for summary judgment on June 5, 2023. Dkt. 59. Five months later, Mr. Johnson filed a motion for extension of time to respond to the summary judgment motion. Dkt. 65. Defendants opposed this motion. Dkt. 66. This Court denied Mr. Johnson's motion for an extension of time concluding that Defendants' motion was ripe for ruling on the merits. Dkt. 68. Nevertheless, Mr. Johnson subsequently filed a response opposing the motion. Dkt. 70. Out of

an abundance of caution and given Mr. Johnson's pro se status, the Court has exercised its discretion and considered Plaintiff's response to the motion for summary judgment.

## II.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in

2

opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## III.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73. The following facts are undisputed.

Mr. Johnson was an inmate at the Marion County Jail ("MCJ") from July 20, 2021, through December 3, 2021. Dkt. 61 at 2. While there, he had multiple pending legal matters. Dkt. 60-1 at 37. His legal materials were not allowed in his cell and instead were stored in a locked closet in the law library. *Id.* at 36-39. When he visited the law library, the library clerk would bring the materials to him from the locked closet so he could utilize them while at the library. *Id.* at 38, 41.

Law library visits are for one hour per week. Dkt. 60-2 at 35. To schedule a visit, inmates complete a message card requesting use of the library. *Id.* Library rules dictate only legal work, a jail authorized pen, and a pad of writing paper are allowed. *Id.* Additionally, photocopies are provided up to 40 sheets per visit, with additional copies approved on a case-by-case basis. *Id.* Inmates are also allowed to request a copy of a specific case or statute to review in their cell, rather than going to the library, by sending a message card. *Id.*

Mr. Johnson first used the law library at MCJ on July 21, 2021, his second day at the jail. *Id.* at 61. During his time at MCJ, he visited or received copies from the law library five times in July, ten times in August, two times in October, and three times in November. *Id.* at 53-61. He was offered access and refused three times in July, four times in August, nine times in September,

seven times in October, ten times in November, and once in December. *Id.* He also received over 100 pages of copies, three legal books, and copies of two legal books. *Id.*

Mr. Johnson filed two grievances related to law library access at MCJ. Dkt. 60-2 at 70, 72. In the first, on July 27, 2021, he grieved that he was not allowed to have all of his legal materials in his cell. *Id.* at 70. Officer Berry responded two days later, stating that it was not allowed due to the amount of legal work he had and the size of his cell. *Id.* at 71. Instead, he could only have copies of the work he needed at that time. *Id.* Officer Berry also noted Mr. Johnson was allowed to make 40 copies per day. *Id.* Mr. Johnson filed a second grievance on August 13, 2021, complaining that he was not brought to the law library that day or the day before. *Id.* at 72. Four days later, Officer Shanklin responded that he would be given extra time at the law library that day to make up for it. *Id.* at 73.

During the relevant time period, Mr. Johnson had two pending lawsuits[1]: (1) *Christopher Michael Johnson v. Officer Daniel Kepler,* 1:20-cv-03084-JMS-DLP (S.D. Ind. Dec. 6, 2021) ("Indiana Case"), and (2) *Christopher Michael Johnson v. Nurse Rita,* 4:21-cv-00037-JHM (W.D. Ky. Dec. 14, 2021) ("Kentucky Case"). Dkt. 61 at 11-12.

Mr. Johnson's Indiana Case was granted in favor of the defendant on the pleadings under the doctrines of *res judicata* and collateral estoppel. *Kepler,* 1:20-cv-03084-JMS-DLP; Dkts. 45-46. Mr. Johnson filed a response to that motion on September 23, 2021, while incarcerated at MCJ. *Id.* at dkt. 40. He also sought to proceed *in forma pauperis* on appeal but was denied because the appeal was not taken in good faith. *Id.* at dkt. 64. His appeal was subsequently dismissed for failure to pay the docketing fee. *Id.* at dkt. 67.

---

[1] Defendants also include arguments related to Mr. Johnson's appeal in *Christopher M. Johnson v. Ann Burton et al.,* No. 20-2923 (7th Cir. Jul. 13, 2021). Dkt. 61 at 10-11. However, as Defendants argue, that matter was dismissed on July 13, 2021, which is one week before Mr. Johnson entered MCJ custody. Therefore, it is outside the relevant time period for this matter and need not be considered.

Meanwhile, the Kentucky Case alleged deliberate indifference to a serious medical need, arguing that the defendant refused to provide him prescribed medication. *Rita,* 4:21-cv-00037-JHM; Dkt. 32. The parties filed cross motions for summary judgment and Mr. Johnson both responded to the defendant's motion and replied to her response. *See id.* at dkts. 22, 28, 29. All three filings were submitted by Mr. Johnson while he was incarcerated at MCJ. *See id.* The court granted summary judgment for the defendant for numerous reasons, including that Mr. Johnson did not have an active prescription for the controlled substances he was requesting. *Id.* at dkt. 32. In the order granting summary judgment, the court certified that any appeal in the matter would not be taken in good faith. *Id.* at dkt. 33.

## IV.
## Discussion

### A. Access to the Courts

"Prisoners have a fundamental right of access to the courts that prisons must facilitate by providing legal assistance." *In re Maxy*, 674 F.3d 658, 660 (7th Cir. 2012) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)). But inmates do not have an "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). As the Supreme Court explained in *Lewis*,

> [t]he mere denial of access to a prison law library or other legal materials is not itself a violation of a prisoner's rights; his right is to access the courts, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed.

*Id.* at 355. To prove an access to court claim, Mr. Johnson must submit evidence identifying "(1) a non-frivolous, underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a suit or settlement." *Jones v. Van Lanen*, 27 F.4th 1280, 1287 (7th Cir. 2022) (quoting *Harer v. Casey*, 962 F.3d 299, 308 (7th Cir. 2020) (citing

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002))). To survive summary judgment, there must be "more than just some minimal degree of impediment," *id.* at 1288, and more than a theoretical injury. *Lewis*, 518 U.S. at 351.

First, Mr. Johnson has not demonstrated that he was prevented from pursuing a non-frivolous underlying claim in either the Indiana Case or the Kentucky Case. *See Jones*, 27 F.4th at 1287 (explaining one of the elements of a denial of access to courts claim is the identification of a non-frivolous underlying claim). In both relevant matters, Mr. Johnson was able to argue the merits of his case and his filings were considered by the court prior to the dismissal of his actions. *Kepler,* 1:20-cv-03084-JMS-DLP; Dkt. 40; *Rita,* 4:21-cv-00037-JHM; Dkts. 22, 28, 29; *see Morris v. Dickman,* 791 F.App'x. 607, 610 (7th Cir. 2019) (where the court assessed the petition's contents and ruled on it, the plaintiff's access to the court was not blocked).

Second, even if Mr. Johnson had evidence that his claims were meritorious, he has failed to demonstrate any basis upon which to conclude that the defendants prejudicially interfered with his litigation. "[A] plaintiff must show more than just some minimal degree of impediment in filing claims." *Jones*, 27 F.4th at 1288. Mr. Johnson alleges he was "deprived of having [his] legal property while litigating open civil matters pro se" and, because of that deprivation, he "was unable to work on" and "unable to win" his civil cases. Dkt. 22 (Amended Complaint). He argues that the bulk of his legal property was "in the library, locked inside of a closet" and he could not access those materials without the law library clerk supervising him, which she often did not have time to do. Dkt. 60-1 at 40-41. These locked materials "filled up a laundry tote" and included discovery, scheduling orders, and legal research he received or completed for over a dozen cases while incarcerated at other facilities. *Id.* at 40-41, 46.

However, the undisputed evidence shows that Mr. Johnson had regular access to the law

6

library and made over 100 copies of legal materials. Dkt. 60-2 at 53-61. He did not miss any dispositive filing deadlines during this time, and he also admits that the legal mail he received while incarcerated at MCJ was available to him. Dkt. 60-1 at 40. This does not support a finding that Defendants prejudiced Mr. Johnson's cases by impeding his access to courts. *See Voss v. Carr*, 2022 WL 2287560, *3 (7th Cir. June 24, 2022) (["E]nsuring that prisoners have meaningful access to the courts does not require prison officials to allocate library time based on the number of cases a prisoner files.") (citing *Lewis*, 518 U.S. at 351); *Owens v. Evans,* 878 F.3d 559, 565 (7th Cir. 2017) (Plaintiff failed to prove actual prejudice when prison law librarians "denied access to his excess legal storage boxes" because he did "not explain why he needed the boxes (for example, if the cases were not available at the library)."). Accordingly, the defendants are entitled to summary judgment on Mr. Johnson's access to court claims.

It is Mr. Johnson's burden to "submit evidence that he suffered an actual injury—i.e., that prison officials interfered with his legal materials—and that the interference actually prejudiced him in his pending litigation." *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013). He has failed to do so.

### B. Qualified Immunity

Because the Court has found as a matter of law that defendants did not violate Mr. Johnson's constitutional rights, the Court need not address their qualified immunity argument. *Sparing v. Village of Olympia Fields,* 266 F.3d 685, 688 (7th Cir. 2001) (the first step of a qualified immunity determination is whether the plaintiff has shown the violation of an actual constitutional right).

## V.
## Motion for Assistance Recruiting Counsel

Mr. Johnson filed a motion for assistance recruiting counsel after the response deadline for the motion for summary judgment had passed. Dkt. 67. Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every pro se case. *See Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022) (explaining that courts must be careful stewards of the limited resource of volunteer lawyers); *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

"'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655-56.

The first question, whether litigants have made a reasonable attempt to secure private counsel on their own, "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. Plaintiff has attempted to contact multiple attorneys

8

with requests for representation without success. The Court finds that he has made a reasonable effort to recruit counsel on his own before seeking the Court's assistance.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "The court's competency evaluation should account for 'the plaintiff's literacy, communication skills, educational level, and litigation experience,' and, to the extent that such evidence is before the court, information 'bearing on the plaintiff's intellectual capacity and psychological history.'" *Watts*, 42 F.4th at 760 (quoting *Pruitt,* 503 F.3d at 655). "Specifically, courts should consider 'whether the difficulty of the case— factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Eagan, 987 F.3d at 682* (quoting *Pruitt,* 503 F.3d at 655).

Mr. Johnson's motion reflects that he has a tenth-grade education and can read "okay" although he has difficulty with spelling. He made his request while in segregation with limited access to phone. He has mental illness, is handicapped, and reports that he has been denied his medication. Mental illness, while relevant to the Court's inquiry, does not create a legal entitlement to the appointment of counsel. *Perry v. Sims*, 990 F.3d 505, 513 (7th Cir. 2021).

But Mr. Johnson is also a frequent litigator and thus has experience with navigating the court's processes. And, he made his request after summary judgment was filed and his deadline to respond had passed. "[T]he merit of a plaintiff's claim is another factor a district court may consider while making an individualized determination whether to recruit counsel based on the plaintiff and the claim in front of it." *Watts*, 42 F.4th at 766. Specifically, the Court may consider all "'available information and the judge's experience to assess the importance and potential merits of the case and to assign priority accordingly.'" *Id.* at 763 (quoting *McCaa v. Hamilton*, 959 F.3d 842, 845

(7th Cir. 2020)). This factor reflects that the decision to recruit counsel remains a practical one because "the decision whether to recruit a lawyer for a particular plaintiff is made against the twofold backdrop of a high volume of indigent, pro se litigants (particularly incarcerated litigants) and a small pool, by comparison, of attorneys willing and able to take those cases on pro bono." *Id.*

As reflected in this Order, Mr. Johnson identified three cases that he alleges were impacted by his access to legal materials. A lawyer would not have made a difference in the Court's review of the record of those cases and the basis for their dismissal. Nor could an attorney have provided evidence to explain how the materials Mr. Johnson had limited access to could have led to a different outcome in those cases. For these reasons, Plaintiff's motion for assistance recruiting counsel is **denied.**

## VI.
## Conclusion

Defendants' motion for summary judgment is **GRANTED**. Dkt. [59]. Plaintiff's pending motion for assistance recruiting counsel, dkt. [67], is **DENIED**. Final judgment will issue in a separate entry.

**IT IS SO ORDERED.**

Date: 2/22/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

CHRISTOPHER MICHAEL JOHNSON
270993
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Amy Stewart Johnson
Frost Brown Todd LLP
asjohnson@fbtlaw.com

John P. Lowrey
City of Indianapolis
john.lowrey@indy.gov

Barry F. McGinley
Frost Brown Todd LLP
bmcginley@fbtlaw.com

Anthony W. Overholt
Frost Brown Todd LLP
aoverholt@fbtlaw.com